## Harris v. Harvey.

(Decided December 6, 1921.)

### Appeal from Metcalfe Circuit Court.

Contracts—Breach—Finding of Chancellor—Sufficiency of Evidence.—In an action for damages for a breach of a contract, evidence held to sustain the finding of the chancellor.

G. B. STONE and R. L. SMITH for appellant.

J. W. KINNIARD for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

J. B. Harvey was surety on two notes, one for $300.00, dated March 14, 1913, and one for $400.00, dated April 21, 1913, which Burr Harris had executed to the Deposit Bank of Monroe county. To secure Harvey against loss, Harris executed to him a mortgage on a saw mill, a lot of saw logs, a yoke of cattle, etc. No payments were made on the notes which were renewed from time to time. During the summer of 1914, and when the notes were past due, Harvey took up the notes by executing his individual note to the bank. Thereupon he filed suit to enforce his mortgage lien. The Trigg National Bank of Glasgow had a prior mortgage on the property to secure a debt of $200.00. The bank of Summer Shade, Ky., also held a mortgage on the yoke of cattle and the lot of saw logs for a debt of about $200.00. This mortgage was inferior to Harvey's mortgage. The Trigg National Bank and the Bank of Summer Shade each filed suit in the same court. The cases were consolidated and judgments rendered by default. In the month of September, Harris sold a half interest in some property which he had in Tennessee and transferred the purchase money notes, amounting to $500.00, to Harvey. The order of sale ren-

dered in the consolidated action was not enforced until April, 1915, when Harvey purchased the property.

In the year 1916, Harris sued Harvey for damages. The basis of the action was a violation of an alleged contract by which Harvey agreed, if Harris would pay $500.00 on the debt, that he would permit Harris to redeem the property by retaining the mill and sawing and delivering to Harvey enough lumber to discharge the balance of the debt. The action was brought and tried in equity, and on final hearing plaintiff's petition was dismissed and he appeals.

Harris testified in substance that when he paid the $500.00 to Harvey, Harvey agreed that he would not raise any execution on the judgment, but that he would finance the operation of the mill, and that they would saw about 95,000 feet of logs and timber which Harvey would either buy or sell to others, and that if this quantity of timber was not sufficient to pay off the indebtedness, they would buy more timber until the debt was paid. Harris admits, however, that after the alleged agreement was made he never operated the mill, but claims that he did not because Harvey failed to furnish the money and he was unable to get the money elsewhere. Harvey admits writing to Harris that, if Harris would pay the $500.00 on the debt, he would "draw the suit" and wait on him a while longer, but denies that he agreed to finance the operation of the mill. He further says that he did wait on him for several months. In the meantime Harris failed to start the mill, and there being no shed over the mill, it was fast depreciating in value. Not only so, but the prior lien was increasing in amount and the logs which Harris had contracted for were rotting. As Harris made no effort to start the mill, the order of sale was enforced. Not only so, but after he purchased the mill he gave Harris the right to redeem it at any time before the sale bond became due. In view of the fact that Harris reported to Bowles that Harvey was to finance him, and to Harvey that Bowles was to finance him, and that each of them had already financed him to his sorrow, we are not inclined to believe that Harvey agreed to furnish the money necessary to operate the mill. It may be conceded that Harvey, in consideration of the payment of $500.00 on the debt, agreed to "draw the suit" and wait a while longer on Harris in order to give Harris an opportunity to pay the balance of the debt by operating the mill. But as Harris made no effort during a period of

seven months to begin operations, and in the meantime the prior mortgage indebtedness was increasing, and the security was fast depreciating in value, we are not prepared to say that Harvey did not wait on Harris for a reasonable length of time. We therefore conclude that the evidence as a whole supports the finding of the chancellor.

Judgment affirmed.